UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SEMINA NESHAY ALSTON,

　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　Case No: 6:21-cv-1170-EJK

COMMISSIONER OF SOCIAL
SECURITY,

　　　　　Defendant.

ORDER[1]

This cause comes before the Court on Plaintiff's appeal of an administrative decision denying her application for Disability Insurance Benefits ("DIBs") and Supplemental Security Income ("SSI"), alleging April 26, 2019, as the disability onset date. (Tr. 12.) In a decision dated November 3, 2020, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled. (Tr. 12–23.) Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court. The undersigned has reviewed the record, the joint memorandum (Doc. 27), and the applicable law. For the reasons stated herein, the Court affirms the Commissioner's decision.

---

[1] On November 10, 2021, both parties consented to the exercise of jurisdiction by a magistrate judge. (Doc. 21.) The case was referred by an Order of Reference on January 20, 2022. (Doc. 25.)

## I. ISSUES ON APPEAL

Plaintiff raises the following issues on appeal:

1. Whether the residual functional capacity ("RFC") determination of the ALJ is supported by substantial evidence.

2. Whether the ALJ properly relied on the testimony of the Vocational Expert ("VE").

3. Whether the ALJ properly evaluated Plaintiff's subjective complaints.

(*See* Doc. 27.)

## II. STANDARD OF REVIEW

The Eleventh Circuit has stated:

In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

## III.   ANALYSIS

### A. Issue One: Whether the RFC determination is supported by substantial evidence.

First, Plaintiff argues that the ALJ erred in determining that Plaintiff has the RFC to perform light work with some additional limitations because the ALJ failed to adequately consider the opinion of Alex C. Perdomo, M.D., ("Dr. Perdomo"), the medical consultative examiner. (Doc. 27 at 9–10.) Plaintiff argues Dr. Perdomo's opinion would limit her to less than sedentary work, and therefore "is clearly at odds with the residual functional capacity determination of the ALJ limiting the claimant to light work with some additional limitations." (*Id.* at 13). Plaintiff further states that the ALJ did "not provide an adequate rationale for failing to provide more weight to Dr. Perdomo's opinion[,]" and that the examinations of James Hynick, D.O., ("Dr. Hynick"), Plaintiff's treating physician, support the conclusions reached by Dr. Perdomo. (*Id.* at 14.) Finally, Plaintiff asserts that the ALJ's alleged error is not harmless, as the hypothetical question posed to the VE did not include the additional limitations noted by Dr. Perdomo, and the ALJ relied upon the VE's testimony to conclude Plaintiff was not disabled. (*Id.* at 15.) Furthermore, a limitation to sedentary work, "with the same vocational/educational factors" of Plaintiff, would result in a finding of disability under the Medical-Vocational Guideline 201.14. (*Id.* at 15.) Defendant responds that the ALJ properly evaluated Dr. Perdomo's opinion, finding it minimally persuasive because it was not supported by his own examination of Plaintiff, and inconsistent with findings made by other medical providers. (*Id.* at 18–

19.)

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the opinions of medical and non-medical sources. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

Under the revised regulations, the Commissioner no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, the Commissioner must "consider" the "persuasiveness" of all medical opinions and prior administrative medical findings. *Id.* To that end, the Commissioner considers five factors: 1) supportability; 2) consistency; 3) relationship with the claimant;[2] 4) specialization; and 5) other factors "that tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* §§ 404.1520c(c); 416.920c(c). The regulations further state that because supportability and consistency are the most important factors

---

[2] This factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)–(v).

under consideration, the Commissioner "will explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision." *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2).[3]

Additionally, pursuant to the new regulations, a "medical opinion" is defined as "a statement from a medical source about what [the claimant] can still do despite [his/her] impairment(s)" and whether the claimant has any "impairment-related limitations or restrictions" regarding certain enumerated abilities. 20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2). A "medical opinion" does not include "judgments about the nature and severity of [the claimant's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.* §§ 404.1513(a)(3); 416.913(a)(3) (defining these categories of information as "other medical evidence"); *see also Rice v. Kijakazi*, Case No. 4:20-cv-01414-RDP, 2021 WL 3473219, at *5 (N.D. Ala. Aug. 6, 2021) ("Statements by a medical source reflecting judgments about a claimant's diagnosis and prognosis are not considered medical opinions because they do not necessarily provide perspectives about the claimant's functional abilities and limitations."). In revising the definition of "medical opinion," the Social Security Administration recognized that "[d]iagnoses and prognoses do not

---

[3] "Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Welch v. Comm'r of Soc. Sec.*, No. 6:20-cv-1256-DCI, 2021 WL 5163228, at *2 (M.D. Fla. Nov. 5, 2021) (footnote omitted) (citing 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2)).

describe how an individual functions" and that although the SSA considers a claimant's statements about his or her symptoms, "[a] more appropriate focus of medical opinions would be perspectives from medical sources about claimants' functional abilities and limitations." 81 Fed. Reg. at 62,562.

Dr. Perdomo examined Plaintiff on July 9, 2019, at the request of the Social Security Administration. (Tr. 651–56.) Based on his examination of Plaintiff, Dr. Perdomo opined that Plaintiff

> can stand and walk for 3-4 hours a day in an eight-hour workday with normal breaks. She can sit for 3-4 hours a day in an eight-hour workday with normal breaks.  She can occasionally lift and carry, but should limit the weightlifting to no more than 5 lbs.  She should also avoid repetitive bending, stooping, crouching, squatting or kneeling.

(Tr. 652.)

The ALJ considered Dr. Perdomo's opinion, but found it "minimally persuasive" because it "appear[ed] to be based on the claimant's self-reported limitations[,]"was unsupported by Dr. Perdomo's own examination, and was inconsistent with the record as a whole. (Tr. 19–20.)

Regarding the supportability factor, the ALJ found Dr. Perdomo's opinion inconsistent with his own examination of Plaintiff. (Tr. 19.) Indeed, as the ALJ noted, Dr. Perdomo's examination revealed Plaintiff to be "in no acute distress," "[s]he was seen walking down the hallway without any difficulties[,] and she did not require an assistive device for ambulation." (Tr. 20, 651.) Dr. Perdomo further noted Plaintiff "was sitting comfortably during the exam and was able to get on and off the examining

table without any problems." (Tr. 20, 651.) The ALJ acknowledged Dr. Perdomo's findings that Plaintiff "had decreased range of motion of her thoracolumbar spine," and "had a positive left straight leg raise." (Tr. 20, 652.) However, the ALJ noted that Plaintiff "had normal sensation and coordination." (Tr. 20, 652.) Accordingly, the ALJ concluded that "[w]hile the claimant's back pain limits her to light work, the record does not support restricting her to sedentary work." (Tr. 20.)

In accordance with the regulations, the ALJ also considered the consistency factor, finding Dr. Perdomo's opinion inconsistent with "the treatment notes from the claimant's physicians." (Tr. 20.) The ALJ cited generally to medical records revealing Plaintiff "generally had normal range of motion, a normal gait, and normal strength[,]" and during some examinations "denied having back pain." (Tr. 20.) Emergency room records from January 25, 2019, where Plaintiff presented with left side pain after a fall, revealed Plaintiff had normal gait, range of motion, strength, and alignment, and intact sensation. (Tr. 18, 20, 619–21.) The ALJ considered radiology studies from January and February of 2019 showing mild degenerative disc disease and no acute fracture, which were later confirmed by an X-ray in May of 2019. (Tr. 18–19, 624–25, 631–32, 645.)

Additionally, emergency room visits on June 3, 2019, and July 10, 2019, where Plaintiff presented with complaints of back pain, indicated Plaintiff had normal range of motion, and no tenderness. (Tr. 19, 686–888, 691–93.) The ALJ noted that Plaintiff did not report any back pain on subsequent emergency room visits on April 10, 2020, and July 10, 2020, and that musculoskeletal physical examination revealed normal

range of motion. (Tr. 19, 20, 791–92, 796–98.) On June 4, 2020, examination of the lumbosacral spine revealed decreased range of motion, but normal strength and tone, and no tenderness. (Tr. 19, 20, 725.) The ALJ noted that lumbar spine X-rays on June 23, 2020, found mild degenerative changes. (Tr. 19, 742.)

Plaintiff argues that the ALJ failed to consider the examinations of Dr. Hynick, Plaintiff's treating physician, which, Plaintiff contends, support Dr. Perdomo's findings. (Doc. 27 at 14.) On October 3, 2019, Dr. Hynick examined Plaintiff and, while noting Plaintiff's subjective complaints, found Plaintiff had "difficulty walking because of her sciatic pain and lumbar pain," that her "lumbar spine [was] painful from L1-L5," and that there was "tenderness to palpation of the lumbar spine" and "evidence of muscular spasm of the lumbar musculature to palpation." (Tr. 703.) Dr. Hynick re-examined Plaintiff on October 31, 2019, and December 2, 2019, similarly noting mostly Plaintiff's subjective complaints, and diagnosing Plaintiff with lumbar degenerative disc disease. (Tr. 704–05.) The ALJ cited generally to Dr. Hynick's medical records, acknowledging Plaintiff "continued to report back pain in October 2019." (Tr. 19.)[4]  The ALJ later in his decision stated that "despite her reports of pain,

---

[4]  While the ALJ acknowledged Dr. Hynick's examinations, noting Plaintiff "continued to report back pain in October 2019[,]" he did not err by failing to discuss them specifically, as they do not constitute "medical opinion" evidence. *See Maguire v. Saul*, No. 8:20-cv-710-T-TGW, 2021 WL 2284463, at *3–4 (M.D. Fla. June 4, 2021) (medical findings are not "medical opinions" because they do not necessarily provide perspectives about a claimant's functional abilities and limitations); *Wood v. Comm'r of Soc. Sec.*, No. 6:20-cv-963-LRH, 2021 WL 2634325, at *5–6 (M.D. Fla. June 25, 2021) (stating the ALJ did not err by failing to weigh "opinions" where the claimant pointed to nothing in the medical evidence "besides 'medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis' *see* 20 C.F.R. §

[Plaintiff] generally ha[d] normal range of motion, normal strength, and a normal gait" and that "during some examinations, [Plaintiff] denied having back pain." (Tr. 21.) Accordingly, the ALJ concluded "the current evidence is more consistent with finding the claimant capable of performing a restricted range of light work." (Tr. 21.)

Under the regulations applicable to Plaintiff's application for DIBs and SSI, the ALJ was required only to articulate how he considered the factors of supportability and consistency in discussing the persuasiveness of Dr. Perdomo's medical opinion. In this case, the ALJ has satisfied this standard because the ALJ discussed the supportability of Dr. Perdomo's opinion (i.e., that Dr. Perdomo's opinion was unsupported by his own treatment notes) as well as the consistency of his opinion with the record (i.e., that his opinion was contradicted by the medical evidence of record). *See, e.g., Moberg v. Comm'r of Soc. Sec.*, No. 6:19-cv-891-Orl-LRH, 2020 WL 4936981, at *4 (M.D. Fla. Aug. 24, 2020) (the ALJ's consideration of medical opinions "comported with the requirements of the new Social Security Regulations because the ALJ articulated the evidence affecting the supportability and consistency of each medical opinion and determined whether such opinion was supported by the weight of the record evidence").

---

404.1513(a)(3), or Claimant's own subjective complaints, none of which constitute 'medical opinions' under the Social Security regulations"). Moreover, the ALJ need not discuss each and every document. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (11th Cir. 2021) (citations omitted) ("So long as the ALJ's decision demonstrates to the reviewing court that it considered the claimant's medical condition as a whole, the ALJ is not required to cite every piece of evidence in the record.").

What Plaintiff is really asking the Court to do is reweigh the evidence with regard to the ALJ's consideration of Dr. Perdomo's opinion, which is not within the province of this Court. Because the ALJ's decision is supported by substantial evidence, the Court rejects Plaintiff's contentions as it relates to the ALJ's consideration of Dr. Perdomo's opinion.

### B. Issue Two: Whether the ALJ properly relied on the VE's testimony.

Plaintiff next argues that the ALJ improperly relied on the testimony of the VE after "posing and relying on a hypothetical question that did not adequately reflect the limitations of the claimant." (Doc. 27 at 22.) Specifically, Plaintiff contends that because the ALJ "did not properly weigh and consider the opinion of Dr. Perdomo, . . . the testimony of the vocational expert should be rejected because it did not fully and accurately reflect the claimant's condition." (*Id*. at 24.) Thus, Plaintiff asserts the ALJ committed a legal error by relying on the VE's testimony. Defendant responds that the ALJ properly rejected limitations from Dr. Perdomo's opinion, and therefore, the ALJ was not required to include those limitations in the hypothetical question to the VE. (*Id*. at 25.)

At step five of the sequential evaluation, the ALJ must determine whether jobs exist in significant numbers in the national economy that a plaintiff can perform. *Winschel*, 631 F.3d at 1180. To make this determination, an ALJ may obtain the testimony of a vocational expert. *Id*. For the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id*. (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227

(11th Cir. 2002)). "If the ALJ presents the vocational expert with incomplete hypothetical questions, the vocational expert's testimony will not constitute substantial evidence." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013).

Plaintiff's argument that the hypothetical posed to the VE did not accurately reflect Plaintiff's limitations is unpersuasive because, as discussed above, the undersigned found no error in the ALJ's RFC determination. *See supra* III(A). Because the ALJ's RFC determination is supported by substantial evidence, and the RFC was incorporated into the hypothetical question posed to the VE, the ALJ did not err in relying on the VE's opinions. *See Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) ("The ALJ is not required to include findings in a hypothetical to a vocational expert that the ALJ has found to be unsupported."). Accordingly, the Court finds the ALJ's reliance on the VE's testimony was proper.

### C. Issue Three: Whether the ALJ properly evaluated Plaintiff's subjective complaints.

Lastly, Plaintiff argues that the ALJ's consideration of Plaintiff's "credibility and subjective complaints was not sufficient." (Doc. 27 at 26.) Plaintiff states that the ALJ did "not offer any specific reasons for undermining the claimant's testimony, and offer[ed] no specific reasons supporting his credibility determination." (*Id.* at 27.) Instead, Plaintiff contends that the ALJ's "determinations are nothing more than boiler plate type language commonly found in Social Security decisions." (*Id.*) Defendant responds that the ALJ properly evaluated Plaintiff's subjective complaints

and found them "inconsistent with the normal or only slightly abnormal objective medical findings" as well as "her own reports about her symptoms, including her denials of back pain at times." (*Id.* at 30–31.) According to the Commissioner, the ALJ's decision is supported by substantial evidence and should be affirmed. (*Id.* at 35.)

Social Security Ruling ("SSR") 16-3p and 20 C.F.R. § 416.929(c) provide guidance as to how an ALJ is to evaluate the subjective complaints of a claimant. SSR 16-3p provides that the "subjective symptom evaluation is not an examination of an individual's character," but instead a two-step evaluation of the evidence at hand. SSR 16-3p, 2017 WL 5180304, at *2–3 (Oct. 25, 2017). First, the ALJ "determine[s] whether the individual has a medically determinable impairment . . . that could reasonably be expected to produce the individual's alleged symptoms." *Id.* at *3. Then, the ALJ "evaluate[s] the intensity and persistence of an individual's symptoms . . . and determine[s] the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *4.

Section 416.929(c) provides that an ALJ is to "consider all of the available evidence from [the claimant's] medical sources and nonmedical sources about how [the] symptoms affect [the claimant]." 20 C.F.R. § 416.929(c)(1). It also provides that medical opinions can be relied upon when evaluating a Plaintiff's subjective complaints. *Id.* Subsections (c)(2) and (c)(3) further specify how the ALJ is to evaluate the subjective complaints.

The ALJ may not reject a claimant's subjective complaints solely because the objective medical evidence does not substantiate the complaints. 20 C.F.R.

§ 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your . . . symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). This regulation instructs administrative law judges to "carefully consider any other information [a claimant] may submit about [his] symptoms." *Id.* § 404.1529(c)(3). It also provides the following six non-exhaustive factors the ALJ should consider when evaluating the subjective complaints: a claimant's daily activities; "the location, duration, frequency, and intensity" of other symptoms; "precipitating and aggravating factors;" "the type, dosage, effectiveness, and side effects" of a claimant's medication taken to alleviate his symptoms; any other treatment for alleviating symptoms; and measures a claimant used to alleviate the symptoms, such as lying down. *Id.* The ALJ may reject testimony about subjective complaints, but that rejection must be based on substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). In the end, subjective complaint evaluations are the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014).

Here, the ALJ acknowledged Plaintiff's allegations that "she was disabled due to limitations caused by lower back radiculopathy, left leg pinched nerve, and bilateral hip pain." (Tr. 17, 346). The ALJ further noted Plaintiff's reports of "worsening of her conditions, significant difficulty attending to personal needs, and significant restrictions in her daily activities." (Tr. 18.) And the ALJ acknowledged Plaintiff's testimony at the hearing that "she was unable to work due to back pain and difficulty

walking, standing, and sitting." (Tr. 18, 47–50.) However, the ALJ concluded:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 18.) While Plaintiff alleges "these determinations are nothing more than boiler plate type language commonly found in Social Security decisions," this language is not improper if supported by substantial evidence. *See Danan v. Colvin*, No. 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013), *report and recommendation adopted*, 2013 WL 1694841 (M.D. Fla. Apr. 18, 2013). And here, the ALJ's conclusion is supported by substantial evidence.

The ALJ considered objective medical evidence, concluding that while "the medical record supports the claimant's assertion her impairments limit her ability to work[,] . . . [it] does not support the claimant's contention her impairments prevent her from working at all." (Tr. 18.) In making this determination, the ALJ noted that a January 25, 2019, lumbar spine X-ray "found mild degenerative disc disease." (Tr. 18, 624–25.) A lumbar spine computerized tomography (CT) in February of 2019 similarly "found no acute fracture [and] mild multilevel degenerative disc disease with left paracentral protrusion." (Tr. 19, 631.) And a lumbar X-ray on May 8, 2019, when Plaintiff was treated for lumbago, indicated "no gross change from the prior x-rays of 1/25/2019." (Tr. 19, 644–45, 882.) The ALJ further noted that while Plaintiff

"reported a flair-up of her chronic lower back pain in July 2019 . . . on examination, she had normal range of motion, had normal strength, had no tenderness, ambulated with a steady gait, and had no swelling." (Tr. 19, 691–93.)

The ALJ acknowledged Plaintiff's complaints of back pain to Dr. Hynick in October of 2019. (Tr. 19, 702–05.) However, the ALJ noted that "in April of 2020, the claimant denied having back pain and had normal range of motion." (Tr. 19, 796–98.) And while Plaintiff "again complained of lower back pain in June 2020, [and] had decreased range of motion of the lumbosacral spine," she was found to have "normal strength and tone." (Tr. 19, 724–25.) A lumbar spine X-ray performed in the same month "found mild degenerative changes" and "a left hip X-ray found very mild osteoarthrosis of both hips." (Tr. 19, 740–42.) The ALJ also noted that in July of 2020, Plaintiff "denied having back pain and she had normal range of motion during the examination." (Tr. 19, 791–92.) A lumbar spine MRI on August 20, 2020, revealed discogenic disc disease with mild canal stenosis and foraminal narrowing at the L4-L5 level. (Tr. 19, 884.)

The ALJ also accounted for Plaintiff's obesity, noting that "[s]omeone like the claimant, with obesity and musculoskeletal complaints, may have more pain and limitation than might be otherwise expected," and incorporated these limitations in Plaintiff's RFC. (Tr. 19.) After consideration of the evidence, the ALJ concluded that "[l]imiting the claimant to a restricted range of light exertional work sufficiently accounts for the limitations caused by her lumbar spine degenerative disc disease, obesity and bilateral hip osteoarthrosis." (Tr. 19.) Thus, to the extent that they were

consistent with the evidence, the ALJ did account for Plaintiff's subjective complaints, crafting an RFC that included limitations caused by her degenerative disc disease, obesity, and hip pain. (Tr. 17, 20.)

In sum, a review of the ALJ's decision belies Plaintiff's argument that the ALJ did not sufficiently articulate reasons for discounting Plaintiff's complaints. As contemplated by the regulations, the ALJ considered the objective medical evidence revealing mostly normal or mild findings, as well as Plaintiff's own statements at times denying back pain, and articulated specific and adequate reasons for finding Plaintiff's subjective complaints not entirely consistent with the evidence. *See, e.g.*, *Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 767 (11th Cir. 2014) (finding the ALJ's discussion of objective medical evidence of record provided "adequate reasons" for the decision to partially discredit the claimant's subjective complaints). To the extent Plaintiff asks the Court to re-weigh the evidence or substitute its opinion for that of the ALJ, it cannot. If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if the undersigned would have reached a different conclusion. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.") (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)). On this record, the ALJ did not err in considering Plaintiff's subjective complaints.

## IV.   CONCLUSION

Upon consideration of the foregoing, it is **ORDERED** that:

1.      The Commissioner's final decision in this case is **AFFIRMED**; and

2.      The Clerk of Court is **DIRECTED** to enter judgment in favor of

Defendant and **CLOSE** the file.

**DONE** and **ORDERED** in Orlando, Florida on September 22, 2022.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE